Our next case is Siemens Government Technologies, Inc. v. Secretary of the Navy, 22-2240. Okay, Counselor Bargaro. Did I pronounce that correctly? Yes, thank you. May it please the Court? Michael Bargaro on behalf of Siemens Government Technologies. This is an appeal over the U.S. Navy's procurement for energy conservation measures in which the Navy refused to reimburse certain costs based on an erroneous contract interpretation. The key question here, Your Honors, is the scope of the project for the Navy's procurement. The Armed Services Board of Contract Appeals claimed that it had no jurisdiction over Siemens' claim because it incorrectly assumed that each of the six naval bases at issue here was a separate project. But the Navy itself always defined the project broadly as the overall URAFSOA project that covered all six naval bases across the U.S. And there's a history of doing that? I'm sorry, Your Honor? There's a history of that happening? Well, in this project, that is how the Navy defined the project. It established the project as the URAFSOA project. That is the region that this is known by. It issued a single project number for this procurement. It consistently used that project number for this procurement. It issued a request for preliminary assessment under that project number. Does the master contract define the term project? It does not specifically define the term project. It uses the terms alternately project or ESPC project. But there is no specific definition for the word project. In the industry, what is a project? A single undertaking? Are we talking about six projects because there are six bases? Is each one a project? No. The project here is the procurement itself. Because in the context of the contract itself, if you look at the specific sections at issue in the contract, section H.4.1, which is one of the three relevant contract provisions here, it states that an agency is liable for the development costs here if, quote, the project addressed by the preliminary assessment later becomes a task order award. So defining the project is critical. That task order didn't get issued, though, for these two. A task order did get issued, Your Honor, for the URAFSO project. For the two that we're talking about? It did get issued for the project. It did get issued for the URAFSO project, yes, Your Honor. Now, what you're saying, Your Honor, and what the Navy is arguing, is that it didn't authorize construction of energy conservation measures at those two specific bases. But that's a separate issue. Or is that the key issue? I'm sorry, Your Honor? Is that the key issue of the case? No, Your Honor. This is about the investigation of energy conservation measures, which is an earlier step of the process. The task order is about specifically authorizing construction of eventual energy conservation measures. But they issued a task order at the end of the project under that same procurement number, the same project number. It covered three bases at which there were still viable energy conservation measures. It covered the entire swath of energy conservation measures that were still viable for the entire project. The fact that it didn't have, that there weren't still viable conservation measures at two of the bases, at Camp Lemontier and Souda Bay, isn't relevant in terms of the award of the development costs, because a task order was issued for the project itself. Again, the project is the URAFSO project. It is the same consistent project number, same procurement number, from start to finish here. What about looking to the phrase task order project that's on Appendix 706? Yes, and the Navy asserts that that's the definition that should be used. And a couple points on that. First of all, that definition is specifically defined, but it's not used in Section H.4.1. You would expect that if that were a defined term, that that defined term would be incorporated into H.4.1 if that's what the contract we're going for. But that's not what it was going for there. It uses the term project, not task order project. Why would it be unreasonable to look at other terms that have the word project in them if the word project by itself is not separately defined? Because task order project is specifically a subset of the ESPC project. So the term ESPC project is used throughout the IDIQ contract, and that is supposed to represent the entire procurement. It's, again, not a defined term, but it is used interchangeably with project. Task order project is specifically defined, and it is a subset, meaning just specifically the energy conservation measures that were authorized for construction. And that is used specifically only for cost allocations in terms of tracking the construction costs later on. But that's not used for development costs. What about Appendix 630, where it talks about project scope? 630? Yes, Appendix 630. Why doesn't the discussion of project scope identified on Appendix 630 support an opposing counsel's argument? You're talking about C.1.1? Correct. Again, that is referring specifically to construction costs, which is a later phase of the development process. So, again, the way this works is that a contractor is asked to investigate a broad range of energy conservation measures. And if at the end of the day, after all things are whittled down, if a task order is issued for the project, and a certain number, if any number of conservation measures are authorized for construction, then you get to claim all of the development costs. Maybe let me attack it a different way. What is your best support for your interpretation of projects that should be applied here? Well, so the Navy doesn't dispute here that the way ESPC projects work is that contractors such as Siemens can claim the development costs for energy conservation measures, the development costs even for conservation measures that are not authorized. So, for example, at the three bases at which conservation measures have been authorized, at Rhoda, Sigonella, and Naples, the Navy is currently compensating Siemens for all of its development costs for all of the energy conservation measures that it explored at those three bases, even if they weren't actually authorized for construction at the end of the day. C.1.1 here on page 630, that just talks about the final construction costs, but that's not what's at issue here, because the large majority of the energy conservation measures that Siemens explored didn't end up in construction. They weren't authorized at the end of the day. Do you have anything specific to point us to in the contract itself that would support up your proposed definition of project? Well, again, we point to a number of things in the overall IDIQ contract that talks about, again, it's not a defined term, but there is a difference between when they talk about project versus projects. Projects meaning different procurements, essentially. Can you point me to a page that would support up what you want us to interpret project to mean in the contract? I will get that to you on break, Your Honor. Thank you. Would you say that in this instance you got paid for the work that you actually did? Siemens is getting paid for the work that it did at three of the naval bases, but it's not getting paid for any of the work that it did at Ceuta Bay and Camp Lemontier, even though, again, it's part of the same overall project. But you didn't complete the work on all of those projects, right? Siemens did complete the work, which was the preliminary assessments there. Assessment and the preparation. But, again, the way these work is you start with a large number of potential conservation measures. Only a small number of them actually get authorized in terms of final construction. The fact that only a small number gets authorized doesn't mean you can't claim the full development costs. And so Siemens did the work, but the fact that only some of them were authorized is not the important issue here. I think your big problem here is H-401. And how do you get out of that? Well, respectfully, Your Honor, I think H-401 is what entitles Siemens, because it's the project addressed by the preliminary assessment. The project here, again, you have to look at the procurement here. The procurement here is the entire Urasa region. There's a document that the board relied on to say that these were six separate projects. You're into rebuttal time, and I don't want to take up. But explain once again why, if you have a single project number, isn't that a single task order? And you got a task order for the projects that you did work on. The projects that you got paid for, you did the preparation and the analysis for those, correct? But you didn't for the other ones that you didn't get paid for. There was a single task order, yes, Your Honor. And Siemens did get paid for those under, again, the single project number for the single project. I think your case boils down to this particular issue there that you just were discussing, and you may want to think about that for your rebuttal. Thank you, Your Honor. Attorney Speck. Yes, Your Honor. Good morning, Your Honors. Elizabeth Speck for the United States. This is a case about energy conservation projects where the norm in contracting is that the contractor does not get its development costs. In these energy savings performance contracts, it lets the contractor recover some costs if a task order for work at that site is actually awarded. Here, Siemens's argument is trying to move the point in time where the government has agreed to assume liability for those project development costs. The contract is set up so that there is a, here, a 20-year income stream where Siemens will be able to recover its costs if it actually generates energy savings to cover its various costs. But the contract is all set up that a contractor expects nothing up front, and certainly a contractor cannot expect to get its preliminary assessment costs or its investment-grade audit costs. But it is a form of partnership, isn't it, between private industry and the government? Yes, Your Honor. It is a partnership trying to get a viable project. At the end of the day, you're looking to get something from the contractors as well. Yes, Your Honor. This is a contract in which the government does not have to front up front, does not have to have an appropriation or upfront costs. Instead, it can get a project developed. It can rely on the expertise of these energy savings performance contractors to determine what would be a viable project that would generate the necessary energy savings to pay for that, again, here over what was a 20-year period. Some of the complexity here starts with the initial master contract, and it calls for a project, and it lists the different six or whatever bases that are going to be involved in this. Siemen goes out and conducts its preparation and analysis. You benefit from that, right? You benefit from that preparation and the work that they did up front. Am I correct so far? Your Honor, I don't think here necessarily the Navy found a benefit, and I think that there are a number of situations under this contract where a contractor could incur these kinds of costs and have no expectation. Doesn't the record show that you recognize a benefit from Siemen's work on the other projects that it did get paid for? Yes, Your Honor, and that's in line with the contract. It concluded that there would be the energy savings, and so in accordance with the contract, it awarded the task order here that covers Rota, Cigenela, and Naples, and those are projects that were covered by an awarded task order, and those are ones in which the Navy was able to, and those are ones in which on page 1259 when you look at the task order 2 costs, those were project development costs that the Navy included in the awarded task order. So here, and the contract specifically says at H.4 that there would not be, that an agency would not be liable for the costs associated with the preliminary assessment unless the project assessed by the preliminary assessment becomes a task order award. Similarly, H.6.2 says that the agency would not be responsible for the investment grade audit costs unless a task order is awarded or authorized by the agency contracting officer. Is that, so the way you apply those provisions in this case, is that consistent with practice in this sector? Yes, Your Honor. Your Honor, there is, the contractor here, the contract establishes the fact that a contractor cannot expect to get any of its development costs unless there is actually a task order that covers that work. Now we got to the rubber meets the road, right? Here there were two task orders. No, Your Honor, there was only one task order, and I wanted to address that point by opposing— By the way, there was a task order. So doesn't that kind of trigger the liability of the government for reimbursing the cost for the others? No, Your Honor, because the task order project only covered work at Rota, Cigenela, and Naples. And so the project development costs that the government agreed to include in their costs, which would ultimately be repaid out of energy savings, were just for those three sites. And I wanted to push back on the contractors— on opposing counsel's assertion that the Navy always treated this as one project. The notices of intent to award always said that the Navy intended to award up to five task orders. For example, on page 803, it stated the Navy would notify offerors when projects could commence if the projects are determined— What is the term project in the contract that's not defined? Your Honor, we would point the court to it. There is no project definition. There is the task order project definition that the court read to opposing counsel. We would also note that the task order itself is the obligating document. We also—the court had also pointed out C.1. That was another provision on page 6 that we cited to our brief. I think the overall structure of the contract, especially 658 to 672, the steps leading up to a task order award suggest that it would be— that the focus is what was actually awarded and what work was done at those sites. So how would you, just to put a finer point on it, define project? Or how are you interpreting project in the contract here? Yes, Your Honor. We're interpreting project here to be the work where the task orders was awarded. So we didn't—the opposing counsel is correct that the agency doesn't get to the level of granularity, that it has to be every single energy conservation measure that was proposed at that site. But basically, the agency drew the line at places where work was being performed. So here, Rota, Cigenela, and Naples. How do you respond to opposing counsel's argument that there's like a single solicitation number regarding the six sites, which I think is part of their argument that it really should all be interpreted as one project? Yes, Your Honor. There was a single solicitation number that was given. But I think the Navy, throughout its correspondence, did, in fact, refer to it as separate projects. And, again, I would point the court at 803, the notice of intent to award. It stated that it would award up to five proposed task orders. It asked the informed offerors that they would perform audits and submit five final proposals, summarizing the survey results, and that the Navy would notify offerors if the projects could commence, if the projects were determined to be beneficial to the Navy. I would also note that the agency, at 805 to 806 of the joint appendix, issued a separate task order RFP for Suda Bay. That Suda Bay is at 805 to 806. 885 to 886 was the task order RFP for Djibouti or CLDJ. Also, I would note that the Navy talked about every notice of intent to award, 905 to 986 of the joint appendix, talked about up to five proposed task orders. It was in the notice of intent to award in November of 2016, where it confirmed the option to contractually bundle Naples, Sijinela, and the Rota sites. And it said the task order for these projects should reflect a single annual payment. So the Navy did ultimately agree to bundle those three, and they were allowed, again, in 1259, the costs that were submitted in the final task order, in the final proposal, were the development costs for the work at the three sites where work was performed. We also just wanted to clarify one point. We had talked about the fact that these are pre-award or development costs, and in their brief, Seaman suggested that they didn't know that these costs were not going to be reimbursed when the Navy issued the task order, and that is incorrect. They submitted, again, on page 1259, there are project development costs that do not, which were included in the task order, which do not include work at Suda Bay and at Djibouti. So it was well known to the contractor that these would not be included, and there's also at 147 to 148 a declaration saying that those costs were not included in the final task order. If the court has no further questions, we respectfully request that the court sustain the board's decision. We thank you. Thank you. Mr. McGarvey, you have 30 minutes. Thank you, Your Honor. Counsel for the government repeatedly stated that these are separate projects at the various sites, one for each Naval base. And Judge Cunningham, going back to your question, and Judge Rayna as well, if you look at Appendix 788, this is the request for preliminary assessment. What page? 788. This is the single request for preliminary assessment. This is kind of what kicks off the project for the Navy and requests Seamans to conduct the preliminary assessment for the project itself. So 788 is the first page. 789, it says Section 1 on page 789, if you're there. It defines the project scope for this project, for this single procurement number. Okay, point me to that, to the project scope. Yes, so it's down in the middle of the page, down Section 1, general requirements, project scope, page 789 of the appendix. 789. Yes. And it defines what the project scope is. This is the request for preliminary assessment. And then it lists Camp Lemontier. It lists Siginella. It lists Rhoda. It lists Naples. It lists Souda Bay. This is what the Navy is defining as the project. This is the start of the project. And the Government Council says that, well, we reserve the right to issue five separate task orders. But it didn't. It issued a single task order for this project under this procurement number. This defines the project. And this is what Siemens was responding to. And this is the work that it did in response to this request for preliminary assessment. So this is what defines the project. So the board below erred in concluding that each of these were separate projects. One of the documents that it relied on in concluding that these were separate projects. What happens if we agree with you? This goes back to the board? Yes, Your Honor. We ask that you conclude that the board has jurisdiction over this because this is a separate project, that a task order was issued for the project, and that the board has jurisdiction over this. How do you respond to opposing counsels pointing to H6.2, which is Appendix 666? And the statements about the agency will not be responsible for any costs incurred, such as proposal preparation costs, or costs incurred in conducting the IGA, unless a TO is awarded or authorized by the agency CO. Well, a TO was awarded. A task order was awarded for the project. And, again, one of the documents that the board relied on below, is Siemens asked for some kind of reassurance from the Navy because this was such a massive project. This is 12 to 15 times the size of most normal projects. So Siemens asked. They said it was an unprecedented, region-wide, six-site ESPC project. So Siemens asked for reassurance, and the Navy came back and said, if a TO is awarded, we'll give you your costs. Did you also find, because you said you were going to do it while you were sitting down, the specific page sites in the master contract itself that supported your proposed definition of project? Did you have those page sites for me? Again, the contract itself does not define, the IDIQ does not specifically define project. It continually refers throughout to ESPC project, which is what it means by the overall project. But it doesn't specifically define project itself. That's up to the agency to define project, and this is how the agency defined the project. Thank you, Your Honor. We thank you for your argument. We thank the parties for their argument.